IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ZEIKOS INC., | ) | |
|         Plaintiff, | ) | Case No. 1:23-cv-00303 |
| v. | ) | Chief Judge Virginia M. Kendall |
| WALGREEN CO., | ) | Magistrate Judge Kari R. Holleb Hotaling |
|         Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL AND FOR SANCTIONS**

Zeikos Inc. ("Zeikos") respectfully submits that the Court should deny the motion of Walgreen Co. ("Walgreen") – with prejudice – because (i) Walgreen has failed to meet and confer with Zeikos pursuant to FRCP 37(a)(1) and Local Rule 37.1 before making the motion, (ii) Zeikos has met its obligations to provide Rule 30(b)(6) testimony, and (iii) Zeikos has appeared for its Rule 30(b)(6) deposition, rendering sanctions under FRCP 37(d)(1) unavailable.

**I.**     <u>**Walgreen Has Failed To Meet And Confer In Good Faith To Resolve This Dispute.**</u>

As a matter of law, this Court must deny this motion of Walgreen to compel discovery because Walgreen has failed to provide the mandatory certification under FRCP 37(a)(1) "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." "Additionally, Local Rule 37.2 and this Court's standing orders require parties to engage in good faith attempts to resolve discovery disputes before bringing a motion before the Court. See L.R. 37.2; J. Kendall Standing Order on Discovery ('Standing Order'). Where a party fails to do so before filing a motion under Rule 37, the Court 'shall ... refuse to hear' the motion. L.R. 37.2; see also Standing

Order….. Plaintiff's failure to comply with either procedural requirement is reason enough to deny his Motions." *Driver v. Chatys*, 2018 WL 11197102, at *3 (N.D. Ill. Aug. 8, 2018).

Walgreen's failure to meet and confer represents an intentional violation of the Rules. (Scileppi Dec. ¶¶ 3-6) Walgreen's attorney rebuffed the offer by Zeikos to obtain specific information in response to his questions (Tr. 96:14-98:21, 144:14-145:11, 281:15-282:15), and instead stated he wanted to file a motion. (Tr. 176:23-25)[1] Walgreen not only filed its notice of motion to compel at 9:36 pm on September 30, 2024, within three hours of the close of the deposition (Dkt. 198), but failed to make any effort to resolve this dispute before filing its supporting memorandum on October 7, 2024. (Dkt. 202; Scileppi Dec. ¶¶ 3-6) Based upon this conduct, the only reasonable inference is that Walgreen is not interested in seeking information from Zeikos but in making a motion that will result in further delay.

Given Walgreen's intentional violation of the rules – which has already taken up too much of the Court's time – the Court should deny Walgreen's motion with prejudice. (Scileppi Dec. ¶¶ 3-6) Otherwise, the Court will be allowing Walgreen to use its intentional violation of the Rules to accomplish its goal of even further delay.

To further demonstrate the lack of good faith of Walgreen in making this motion, we will address its lack of merit.

**II.     Zeikos Properly Designated Mr. Goldstein As Its Rule 30(b)(6) Witness.**

Rule 30(b)(6) provides that a corporation may designate as its corporate representative anyone who "consents to testify" on its behalf. *Vance v. Int'l Bus. Machines Corp.*, No. 20 C

---

[1] Obtaining additional information during a break at the deposition is not uncommon. (Dunnegan Dec. ¶¶ 3-6) Walgreen's objection to this practice suggests that it is not interested in obtaining information, but in slowing the completion of discovery, and delaying the trial.

2

577, 2022 WL 22876434, at *3 (N.D. Ill. May 24, 2022)("The corporation can designate *anyone* to be the deponent, even a non-employee, if it wishes…"); *FinishMaster, Inc. v. GMP Cars Collision Fairfield, LLC*, 2020 WL 13574986, at *5 (S.D. Ind. Sept. 8, 2020)("[W]hile Palermo might be the most obvious person who could be designated to be deposed on behalf of the GMP Companies, Federal Rule of Civil Procedure 30(b)(6) expressly permits entities to designate anyone—including non-employees—to testify on their behalf."). The ABA has recognized that "[t]his may be … a stranger to the corporation hired to serve as a 30(b)(6) witness." (https://www.weil.com/~/media/Files/PDFs/A-practical-guide)(last visited Oct. 12, 2024).

Zeikos's selection of Stephen Goldstein, Esq., a corporate attorney (Goldstein Dec. ¶ 1), was practical. Walgreen's topics 2, 3, and 4 concerned obligations under contracts, and topic 16 concerned a damage calculation. Accordingly, Walgreen has no basis to complain about Zeikos's selection of Mr. Goldstein as its Rule 30(b)(6) witness.

**III.     Subject To Zeikos's Objection On Two Topics, Mr. Goldstein Was Prepared On The Topics Contained In The Rule 30(b)(6) Notice.**

Walgreen's Counsel designed his examination to (i) ignore the knowledge the witness had on the noticed topics, and then (ii) ask questions that were either (a) beyond the scope of the noticed topics, or (b) so specific that the topic did not provide "particularized" notice of the question. This type of questioning abused Rule 30(b)(6). While Mr. Goldstein prepared on all 19 of the topics, subject to Zeikos's objections (Goldstein Dec. ¶ 3; Dkt. 202 at Exs. 2, 3, 5), we address below the specific topics Walgreen raised in its memorandum.

**Topic 1: "Zeikos's knowledge of Infinitive brand sales prior to October 2019."**

Mr. Goldstein was prepared to address (Goldstein Dec. at ¶¶ 4-10, Ex. A), and did address, this topic. (Tr. 17:22-140:9) In response to an open-ended question, Mr. Goldstein

3

testified that James Trappani ("Trappani") had told him that Zeikos received confusing sales data for Infinitive brand products from a Walgreen employee, Elena Chernenko ("Chernenko"), in April and May 2019, which did not allow Zeikos to calculate the dollar amount of the annual sales of Infinitive product. (Tr. 18:2-19:15) This testimony is consistent with (i) the allegations in Zeikos's Third Amended Complaint (Dkt. 105 ¶¶ 19-20, 27, 114), (ii) the contemporaneous communications between Walgreen and Zeikos (Goldstein Dec. Ex. A), and (iii) the deposition testimony of Walgreen's own witness, Chernenko. (Scileppi Dec. Ex. AO at 23:9-72:2) Mr. Goldstein was prepared to discuss that sales data, and its limitations further (Goldstein Dec. at ¶¶ 6, 9, Ex. A), but Walgreen's Counsel barely questioned him on that data (Tr. 19:19-10:8, 35:18-36:25), apparently because that would demonstrate that Mr. Goldstein was prepared to testify on this topic.

In addition, Mr. Goldstein testified that Albert Gehrke represented to Jack Saideh ("Saideh") and Trappani at the May 14, 2019, meeting that Walgreen's sales of Infinitive brand products from the Premium Space had been $80-100 million in the prior year. (Tr. 18:10-19:15; Goldstein Dec. ¶¶ 5-10) Counsel for Walgreen did not even ask Mr. Goldstein what Saideh had told Mr. Goldstein on this topic. (Tr. 17:22-140:9)

Instead, Walgreen's Counsel focused on information beyond the scope of the topic. First, Walgreen's Counsel questioned Mr. Goldstein for over nine pages of the transcript about a 2017 email with partially printed attachments (the "2017 Document" marked as DX 85) from Walgreen's Hong Kong office, requesting a quote based on "estimated annual sales" of Infinitive products for delivery in the Summer of 2018.[2] (Tr. 20:10-28:15, 37:2-38:15; Scileppi Dec. at

---

[2] The Zeikos employees who received the 2017 Document, Adam Ades and Asher Meshulam, are no longer employed by Zeikos. (Scileppi Dec. ¶ 29) Walgreen noticed the

¶ 29)  Despite referencing the testimony about this 2017 Document in its memorandum (Dkt. 202 at p. 4) this document was so immaterial, that Walgreen did not even bother to attach it as an exhibit to its motion. (Dkt. 202)  Putting aside the fact that the 2017 Document was before the initial time period defined in Walgreen's notice (Dkt. 202 at Ex. 2), an "estimate" of future sales is beyond the plain meaning of "sales," which means sales that had occurred.  Because nothing in the 2017 Document provided Zeikos with knowledge concerning Walgreen's "sales" of Infinitive brand products, there was no reason to prepare Mr. Goldstein to testify concerning it.

Second, Walgreen's Counsel's questions about Zeikos's early 2019 bid for the private label deal which never materialized, were also beyond the scope of the topic. (Tr. 21:14-24, 31:8-33:23, 38:16-24)  Beyond testifying about Chernenko's disclosures, Mr. Goldstein had no obligation to anticipate Walgreen's Counsel's *argument* that Zeikos's consideration of a private label bid shows some additional knowledge of Infinitive sales, and then testify to rebut it.

In addition, Walgreen has already deposed both of Zeikos's employees with knowledge on this topic. (Scileppi Dec. Ex. AL at 62:13-101:23, 294:14-296:5, Ex. AM at 42:3-92:24; Goldstein Dec. at ¶¶ 9 and 10)  Walgreen has itself refused to provide any Rule 30(b)(6) testimony on a topic where the individuals with knowledge have already been deposed. (Scileppi Dec. ¶ 12, Ex. AH at pp. 6-8/12)

**Topics 2 and 3**: **"The parties' respective obligations based on the terms of the PPA" and "The parties' respective obligations based on the terms of the Amended PPA"**

Mr. Goldstein was prepared to address (Goldstein Dec. at ¶¶ 11-17, Exs. B-E), and did address, these topics. (Tr. 40:10-96:8)

---

deposition of former employee Asher Meshulam, but then concluded it was "not necessary," and Walgreen never sought the testimony of Adam Ades. (Scileppi Dec. ¶ 29)

The questions that Walgreen now complains that Mr. Goldstein did not answer were not sufficiently particularized to provide notice that this specific information was sought. Walgreen's argument that Mr. Goldstein did not talk to Saideh or Trappani about paragraph one of the agreements misleadingly cites only a portion of the testimony. (Dkt. 202 at p. 9) Mr. Goldstein (i) testified regarding Walgreen's obligations under paragraph one, which expressly incorporates Exhibit A (Tr. 40:18-43:15), (ii) specifically stated he spoke with Saideh and Trappani about Walgreen's obligations pursuant to that paragraph (Tr. 46:15-47:15), but (iii) stated he did not speak to them specifically about how to apply the paragraph to Walgreen's Counsel's hypothetical situation. (Tr. 43:16-46:14)

Similarly, Walgreen's Counsel asked specific questions about phrases, which Walgreen made no effort to particularize in its notice. (Dkt. 202 at pp. 9-10) Walgreen's argument that Mr. Goldstein "did not know Zeikos' understanding of the contract's provision that 'Walgreen may terminate in its sole discretion its use of any one or more of the fixtures during the term'" again, misleadingly only cites to a portion of the testimony. (Dkt. 202 at pp. 9-10) While Mr. Goldstein stated he did not ask their interpretation of every single sentence in that paragraph, he testified about his discussions with Saideh and Trappani about Walgreen's obligations under that section. (Tr. 61:7-64:10) Walgreen's argument – that a Rule 30(b)(6) witness has an obligation to go word for word through each contract and ask each person involved in the contract what each word in the contract meant – is plainly unreasonable. (Dkt. 202 at pp. 9-10)

If Walgreen's Counsel had a good faith interest in its hypothetical situation, or a particular phrase beyond its plain meaning, he could have (i) particularized the request, or (ii) invited the witness to speak with Saideh or Trappani during a break. Counsel for Walgreen did not do either.

Again, Walgreen is improperly using the Rule 30(b)(6) deposition to extract information from two witnesses who Walgreen has already individually deposed. (Scileppi Dec. at ¶ 12, Ex. AH at pp. 6-8/12; Ex. AL at 31:13-32:15, 94:24-101:23, 210:6-215:2; Ex. AM at 81:15-90:16, 99:22-100:6, 151:14-158:7; Goldstein Dec. at ¶¶ 15-17)

**Topic 4: "The parties' respective obligations based on the January 2021 Deal."**

Before the deposition, Counsel for Zeikos served an amended Rule 26(a)(1) voluntary disclosure stating that Zeikos would withdraw Zeikos's third claim concerning this contract. (Goldstein Dec. Ex. AG) (Zeikos wants to focus on its significantly larger claims for fraud and breach of the APPA.) Walgreen is not counterclaiming against Zeikos under this contract. (Dkt. 135 at 85-86/88) The fact that Walgreen is counterclaiming for breach of purchase orders during the time of this contract does not make this January 2021 contract relevant. Accordingly, at the time of the deposition, this topic was no longer relevant to the parties' claims or defenses.

Mr. Goldstein was prepared to address this topic, although not to the same degree that he was prepared to address topics that may be relevant to the case. (Goldstein Dec. at ¶¶ 18-23, Exs. F, G, H; Tr. 83:4-19, 285:10-288:14)

Again, Walgreen is improperly using the Rule 30(b)(6) deposition to extract information from two witnesses who Walgreen has already deposed. (Scileppi Dec. ¶ 12, Ex. AH at pp. 6-8/12; Ex. AL at 275:4-283:15; Ex. AM at 186:12-187:22)

The fact that Walgreen is taking the Court's time to address this issue concerning a contract that is no longer the subject of this case demonstrates that Walgreen is not making this motion to obtain discoverable information for use at trial.

**Topic 6:** **"Zeikos' knowledge of Walgreens' stores that were missing inventory of Premium Merchandise, sometimes referred to as 'Store Outs'."**

Mr. Goldstein was prepared to address (Goldstein Dec. at ¶¶ 24-29, Exs. I-K), and did address, this topic. (Tr. 104:9-126:23)

Walgreen's Counsel, however, did not even ask Mr. Goldstein an open-ended question about Zeikos's knowledge on this topic.[3] Instead, Walgreen's Counsel's asked questions that were either beyond the scope of the topic, or not particularized. (Tr. 112:5-18; 117:14-118:5; Tr. 118:6-119:4; Tr. 120:2-126:23) That Mr. Goldstein could not recall whether a particular document was one he reviewed is not surprising, because he looked at representative samples from a pool of over 150 documents on this topic. (Goldstein Dec. ¶ 25) Nor can Mr. Goldstein be criticized for not specifically preparing on Walgreen's Counsel's subjective use of the word "regularly." (Tr. 120:2-126:23)

Again, Walgreen does not lack any information. Walgreen already deposed the individual at Zeikos, Lindsey DeFreese, with knowledge on this topic. (Scileppi Dec. ¶ 12, Ex. AH at pp 6-8/12; Ex. AN at 41:25-42:6, 78:4-91:6, 101:14-106:13; Goldstein Dec. ¶ 29)

**Topic 7:** **"Zeikos's knowledge of its failure to deliver Premium Merchandise ordered by Walgreens, including Zeikos' failure to deliver on time and failure to deliver at all."**

As narrowed by Zeikos's objection and the meet and confer (Dkt. 202 at Exs. 2, 3, 5), Mr. Goldstein was prepared to address (Goldstein Dec. at ¶¶ 30-41, Exs. N-R), and did address, this

---

[3] Counsel for Walgreen badgered the witness for failing to prepare based on an incorrect definition of "store outs." Mr. Goldstein properly testified that, as Zeikos would have understood "store outs," it would mean a store that would have had 26 products on the 010 fixture, or 22 products in the saddle fixture, but did not have the inventory at that moment for one of the products, for whatever reason. (Tr. 106:5-19) Counsel for Walgreen's definition - "the number of stores for which there is zero inventory of a particular item" - was inconsistent with the Product Placement Agreement. (Tr. 106:20-107:5, 112:19-133:7) For example, a store with a Saddle Fixture, instead of an 010 Fixture, should never have had inventory of four of the Premium Space Products, but that lack of inventory should not count as a "store out."

8

topic. (Tr. 126:24-164:14) Counsel for Walgreen failed to ask Mr. Goldstein an open-ended question about what he knew on this topic. (Tr. 126:24-164:14) Despite knowing from the meet and confer that Zeikos considered the spreadsheet bates stamped Z006529 to be the main document on this topic (Dkt. 202 at Ex. 5) and despite Mr. Goldstein referencing that spreadsheet (Tr. 146:5-13), Walgreen's Counsel did not ask a single question about it. (Tr. 126:24-164:14) Instead, Walgreen's Counsel questioned the witness about Walgreen's internal business record. (Tr. 146:5-151:23) And, contrary to their meet and confer representation, Walgreen's Counsel asked extensively about specific orders. (Tr. 128:17-133:6, 154:19-164:14; Dkt. 202 at Ex. 5)("[Y]ou agree that you are not seeking any additional information beyond the fact of the short shipments themselves.").

When Mr. Goldstein did not know certain details within the massive Cost Recovery Report spreadsheets, which Walgreen had not particularized in its notice, Mr. Goldstein obtained it from Zeikos, and provided it. (Tr. 133:7-145:23; 289:2-295:16; Goldstein Dec. ¶¶ 37, 40, 42, Exs. Q, R, S; Dunnegan Dec. ¶¶ 3-6)

**Topic 8:** **"Zeikos' financial performance between 2017 and 2022, including salaries and distributions, both direct and indirect to Jack Saideh and persons or entities related to him (including Topway LLC), as well as company expenses."**

On September 13, 2024, Zeikos served an objection to this topic on multiple grounds, including the lack of particularity. (Dkt. 202 at Ex. 3) Asking anyone to testify concerning the "financial performance" of a multimillion-dollar corporation over a six-year period, including all "company expenses" is blatantly unreasonable and can have no legitimate purpose beyond setting up a motion – designed to delay the case – arguing that the witness was not prepared.

9

Indeed, Walgreen objected to the Rule 30(b)(6) notice of Zeikos on topics that were much narrower than this on the ground that they were overly broad, and refused to provide any Rule 30(b)(6) testimony concerning them. (Scileppi Dec. ¶ 11, Ex. AH at pp. 2-3/12)

To move the case toward trial, Zeikos nevertheless agreed to provide testimony "concerning its general financial condition during the period after January 1, 2019, until August 2022." (Dkt. 202 at Ex. 3) On September 24, 2024, counsel began to meet and confer by phone concerning Zeikos's objection on this topic. (Dkt. 202 at Ex. 5) Walgreen's Counsel prematurely ended this meet and confer, and never completed it – either before, during, or after the deposition. (Dkt. 202 at Ex. 5; Scileppi Dec. ¶¶ 3-6)

As narrowed by Zeikos's objection, Mr. Goldstein was prepared to address (Goldstein Dec. at ¶¶ 43-46, Exs. T-AB), and did address, the general financial condition of Zeikos. (Tr. 164:15-185:4) Mr. Goldstein testified that he had reviewed the tax returns for Zeikos for the years 2017 through 2022, comprising over 500 hundred pages of documents, as well as Zeikos's salary chart. (Tr. 164:15-166:4; 170:2-15)(Goldstein Dec. Exs. T-AA) Without showing the tax returns to Mr. Goldstein, Counsel asked Mr. Goldstein to recall portions of them from memory. (Tr. 166:17-167:16; 174:22-179:9) *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013)("…Rule 30(b)(6) is not designed to be a memory contest…).

Walgreen's Counsel then questioned Mr. Goldstein about two financial reports (Tr. 167:17-179:9), out of thousands of pages of financial documents that Zeikos produced in the case (Scileppi Dec. ¶¶ 7-8), and then asked Mr. Goldstein argumentative and loosely worded questions about "personal expenses" and whether "personal expenses" appeared on the tax

10

returns.[4] (Tr. 179:10-185:4) The amount and characterization of all expenses of a business over a five-year period is absurdly detailed, and whether each business expense of Zeikos was "properly" classified based on the application of tax law is beyond the scope of Rule 30(b)(6) testimony.

If Walgreen had a genuine interest in a particular financial document beyond the tax returns, or any specific expenses, Walgreen could have particularized that request, or accepted Zeikos's offer to obtain information from Zeikos during a break. Again, Counsel for Walgreen failed to do either.

**Topic 9: "Zeikos' Gross Profit Margin."**

Mr. Goldstein was prepared to address this topic. (Goldstein Dec. at ¶¶ 47-50, Exs. T-AA) He explained that Zeikos's gross profit margin could be calculated based upon the first page of the Zeikos's tax returns, by subtracting the costs of goods sold from the gross revenue and dividing the result by the gross revenue. (Tr. 185:5-186:13)

But, Walgreen's Counsel had no interest in taking Zeikos's testimony about Zeikos's gross profit margin. (Tr. 185:5-188:20) Without showing Mr. Goldstein the tax returns, Counsel for Walgreen only asked about the calculation for two specific years. (Tr. 185:5-187:22)

Counsel for Walgreen then asked Mr. Goldstein about the report of Zeikos's expert, who Zeikos will no longer rely upon, because Zeikos has elected to claim damages represented by a rebate rather than lost profits.[5] (Tr. 187:23-188:20; Scileppi Dec. ¶¶ 30-31) That report (which

---

[4] While Walgreen loosely argues the financial report "found" that expenses were "not bona fide" (Dkt. 202 at p. 11) the financial report – which Walgreen did not bother to attach to its motion (Dkt. 202) – contains no such finding.

[5] In its Third Amended Complaint, Zeikos pled that on this second claim that it sought as the remedy for Walgreen's breach either lost profits or a rebate under paragraph 4 of the APPA. (Dkt. 105 at 66/74) Zeikos has since decided to pursue the rebate claim, and not the lost profits

11

Walgreen did not even bother to attach to its motion papers), however, addressed only the profit margin of Premium Space Products, without considering Zeikos's $7 million payment to Walgreen. (Scileppi Dec. ¶ 30) The report was therefore beyond the scope of the noticed topic. (Scileppi Dec. ¶ 30)

If Walgreen's Counsel had a genuine interest in Zeikos's expert report, he would have (i) included the report within the scope of the topic, or (ii) accepted Zeikos's offer to obtain information during a break. Walgreen's Counsel failed to do either.

**Topic 13:** "Zeikos' knowledge of Premium Space Merchandise sales on or before April 2020."

Walgreen's topic contained an ambiguity about the meaning of "sales," resulting in Zeikos having to prepare its witness twice. (Dkts. 202 at Exs. 2, 3 and 5; Goldstein Dec. ¶¶ 51-55) Based on the ambiguity in the topic, and "double" preparation, Mr. Goldstein was momentarily confused. (Tr. 226:18-302:11; Goldstein Dec. ¶¶ 51-55, Exs. AC-AF) After his recollection was refreshed, he testified fully on this topic. (Tr. 296:20-300:19) Walgreen's Counsel did not ask any further questions on this topic. (Tr. 304:17-317:8)

As with other topics, Walgreen already individually deposed the Zeikos employee with knowledge on this topic. (Goldstein Dec. ¶ 55; Scileppi Dec. Ex. AN at 106:17-110:17)

**Topic 16:** "The bases and calculation of Zeikos' claimed damages in this case."

To prepare for this topic, Mr. Goldstein reviewed the contracts, the Third Supplemental Rule 26(a) disclosure of Zeikos, and spoke with Saideh and Counsel for Zeikos. (Goldstein Dec. ¶¶ 56-62, Exs. P, Q, AG) Mr. Goldstein testified as to the categories of damages that Zeikos

---

claim. (Scileppi Dec. ¶¶ 30-31; Dkt. 202 at Ex. 7) Accordingly, Zeikos did not "shift" its position, but elected one of two overlapping remedies that it had pled in its third amended complaint.

seeks (i) as to the fraud claim, repayment of the $7 million product placement fee, prejudgment interest, and punitive damages, and (ii) for the contract claim, a refund based on Paragraph 4 of the APPA, and prejudgment interest. (Tr. 241:18-242:21, 243:24-244:8, 246:10-25) Mr. Goldstein testified that the value of what Zeikos received as a result of the fraud should be measured at the time of the fraud (Tr. 247:2-13) and did not depend on the revenue that Zeikos received as the contracts proceeded. (Tr. 249:9-22, 263:12-264:11) Mr. Goldstein also testified that the additional Zeikos products that Walgreen purchased to place in areas of its store separate from the Premium Space are irrelevant to the breach of contract analysis. (Tr. 271:6-276:5)

When Counsel for Walgreen pressed Mr. Goldstein for a precise dollar amount for Zeikos's breach of contract damages, Mr. Goldstein testified that he could provide a calculation but could not provide Walgreen with a precise number, because the number will depend on Walgreen's data which purports to show Walgreen's performance, or lack thereof, in placing the required products in the required fixtures. (Tr. 242:22-244:8) Thus, Mr. Goldstein stated that the exact application of the contractual refund formula cannot be made at this time. (Tr. 242:22-244:8) Given Walgreen's failure to appear at a Rule 30(b)(6) deposition, that is correct. (Dunnegan Dec. at ¶¶ 7-13)

Counsel for Walgreen then asked Mr. Goldstein improper questions, such as the legal basis for seeking prejudgment interest (Tr. 244:9-23), and the results of formulas based upon hypothetical facts. (Tr. 265:21-270:15) These exceed the scope of examination of a fact witness. Mr. Goldstein cannot be expected to be prepared on Zeikos's corporate knowledge of legal standards, or providing answers to Walgreen's hypothetical scenarios.

Walgreen's argument that Zeikos's prior expert report is within the scope of topic 16 is wrong. Because Zeikos is not relying upon the report, the report does not provide either the

13

"bases" or the "calculation" of Zeikos's damages. (Scileppi Dec. ¶¶ 29-31)(Dkt. 202 at Ex. 7)

Again, Counsel for Walgreen did not seek this information in good faith. Counsel for Zeikos again attempted to resolve the dispute, offering to provide Zeikos's response to Walgreen's questions as a contention interrogatory. (Tr. 253:19-255:3) Counsel for Walgreen refused. (Tr. 253:19-255:3) In response to Walgreen's objections to Zeikos's notice of Rule 30(b)(6) deposition to Walgreen, Zeikos agreed to allow Walgreen to provide certain information responsive to certain Rule 30(b)(6) topics as responses to contention interrogatories. Walgreen's Counsel provided a written response, but refused to have its client verify them. (Scileppi Dec. ¶¶ 14-18, Ex. AI, AJ) Walgreen Counsel's written response for its counterclaim damage calculation is barebones (Scileppi Dec. ¶¶ 14-21, Exs. AI, AJ at 21-22/25, and AK), and Walgreen's Counsel refused to provide any further detail, such as what factual basis or theory its expert will apply. (Scileppi Dec. ¶¶ 20-21).

Accordingly, the witness was prepared, and Walgreen lacks no knowledge on this topic.

## IV. **FRCP 37(d)(1) Does Not Permit Sanctions Because Zeikos Appeared For Deposition.**

FRCP 37(d)(1)(a)(i) authorizes a court to impose a sanction only for a party's failure to attend its own deposition. That does not apply in this case, as there is no scenario under which Mr. Goldstein's answers are tantamount to a failure to appear. Even Walgreen is not seeking to redo the entire deposition. (Dkt. 202 at p. 6)

Nor was Zeikos's Counsel's conduct improper. Zeikos's Counsel objected to Walgreen's Counsel's ambiguous and improper deposition questions, which abused the Rule 30(b)(6) process, and never instructed the witness not to answer. (Scileppi Dec. ¶¶ 22-24; Tr. 3:2-317:10) Nor did Zeikos's Counsel "coach" the witness. (Scileppi Dec. ¶¶ 22-24)

14

In any event, it is unclear whether a Magistrate Judge can award sanctions or must provide a report and recommendation to the District Judge. Compare *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996)("The fact that an attorney was the subject of a sanctions request does not change the fact that resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations *de novo*.") with *Belcastro v. United Airlines, Inc.*, 2020 WL 1248343, at *4 (N.D. Ill. Mar. 15, 2020)("However, within this District, it appears that many courts treat Rule 37 sanctions as a dispositive matter and, where imposed by a magistrate judge, subject to *de novo* review.").

The "lack of knowledge" and objections stemmed from Walgreen's Counsel's use of the deposition to create a pretense for a motion to compel, rather than to actually obtain information about Zeikos's knowledge.

## Conclusion

For the reasons set forth above, Walgreen's motion should be denied with prejudice.

Dated: October 16, 2024                                   Respectfully submitted,

/s/ *Annette M. McGarry*                                  /s/ *William Dunnegan*
Annette M. McGarry (#6205751)                             William Dunnegan (*pro hac vice*)
  amm@mcgarryllc.com                                      wd@dunnegan.com
Marianne C. Holzhall (#6204057)                           Laura Scileppi (*pro hac vice*)
  mch@mcgarryllc.com                                      ls@dunnegan.com
McGarry & McGarry, LLC                                    Dunnegan & Scileppi LLC
120 North LaSalle Street, Suite 1100                      437 Madison Avenue, 24th Floor
Chicago, Illinois 60602                                   New York, New York 10022
(312) 345-4600                                            (212) 332-8300

Attorneys for Plaintiff and Counterclaim Defendant Zeikos Inc.

**Certificate of Service**

       I, William Dunnegan, certify that on October 16, 2024, I caused to be electronically filed the foregoing OPPOSITION TO WALGREEN'S MOTION TO COMPEL AND FOR SANCTIONS, true and correct copies of which will be served via the Court's ECF/CM system on all counsel of record.

                                                                    /s/ *William Dunnegan*