**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ZEIKOS INC., | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-00303 |
| v. | ) | Chief Judge Virginia M. Kendall |
| WALGREEN CO., | ) | Magistrate Judge Kari R. Holleb Hotaling |
| Defendant. | ) | |

**DECLARATION OF STEPHEN M. GOLDSTEIN IN OPPOSITION TO**
**WALGREEN'S MOTION TO COMPEL AND FOR SANCTIONS**

STEPHEN M. GOLDSTEIN hereby declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct.

1.      I am a member of the Bar of the State of New York, having been admitted to practice in 1985.  I have been self-employed as a corporate attorney since 2012.  Before that, I was an in-house counsel for Mitsui & Co., a large Japanese trading company, for more than 23 years.

2.      I am making this declaration to set forth the facts concerning my preparation, topic by topic, to testify as the Rule 30(b)(6) witness for Zeikos in this action.

3.      I was prepared to address each of the 19 topics in the Notice of Deposition, as modified by Zeikos's objections.  The details about my preparation for topics 1-4, 6-9, 13 and 16 are as follows.

**Topic 1**:  **"Zeikos' knowledge of Infinitive brand sales prior to October 2019."**

4.      I was prepared to address this topic, and engaged in the following work to prepare.

5. I reviewed portions of the deposition transcripts for Jack Saideh, James Trappani, and Elena Chernenko.

6. I reviewed the 15 emails and attachments (which included the spreadsheets previously marked as PX 310A, 310B, 310C, and 310D) annexed hereto as Exhibit A.

7. I reviewed portions of the Third Amended Complaint in this action. (Dkt. 105)

8. I reviewed paragraph 94 in Walgreen's Answer to the Third Amended Complaint. (Dkt. 135)

9. I spoke with Jack Saideh and Zeikos's former employee, James Trappani.

10. I confirmed that no other current employee at Zeikos has knowledge on this topic.

**Topics 2 and 3**: **"The parties' respective obligations based on the terms of the PPA."** **and "The parties' respective obligations based on the terms of the Amended PPA."**

11. I was prepared to address these topics and engaged in the following work to prepare.

12. I reviewed the documents constituting the contracts, previously marked as PX 56 (also marked as DX 86 at the deposition) and PX 119A, and annexed hereto as Exhibits B and C.

13. I reviewed the June 12, 2019, email previously marked as PX 19, which contained an image of the saddle fixture, annexed hereto as Exhibit D.

14. I reviewed the June 18, 2019, email previously marked as PX 23, which contained an image of the 010 fixture, annexed hereto as Exhibit E.

15. I reviewed portions of the deposition transcripts for Jack Saideh, James Trappani, Amanda Corbett, and Albert Gehrke.

16. I spoke with Jack Saideh and James Trappani about the parties' respective obligations based on the two contracts.

17. I confirmed that nobody else at Zeikos had knowledge of these topics.

2

**Topic 4**:  **"The parties' respective obligations based on the January 2021 Deal."**

18.    Before the deposition, counsel for Zeikos informed me that Zeikos was withdrawing the remaining portion of its claim concerning breach of the January 2021 Deal, and that this rendered the topic moot.

19.    To initially prepare to discuss this topic, before learning that it was moot, I reviewed the following.

20.    I reviewed the two January 20, 2021, term sheets previously marked as PX 132 and 133, annexed hereto as Exhibits F and G.

21.     I reviewed the January 20, 2021, email from Albert Gehrke stating "We have received both agreements," previously marked as PX 134, annexed as Exhibit H.

22.    I spoke with Jack Saideh, the signatory to the term sheets, concerning the parties' respective obligations based on the two term sheets.

23.    When I stated at the deposition that I did not prepare to testify on this topic (Tr. at 83:4-19), I meant that I did not prepare to the degree that I had prepared for the remaining topics that actually remain in the case.  I clarified this point later in the deposition. (Tr. 285:10-288:14)

**Topic 6**:  **"Zeikos' knowledge of Walgreens' stores that were missing inventory of Premium Merchandise, sometimes referred to as 'Store Outs'."**

24.    I was prepared to address this topic, and engaged in the following work to prepare.

25.    I reviewed representative samples of emails and data reports that Zeikos received from Walgreen concerning "store outs" from a pool of over 150 documents.  The representative samples included, but were not limited to, the documents annexed as Exhibits I through K.

26.    I reviewed the photographs Zeikos took of Walgreen's stores, annexed as Exhibit L.

27.     I spoke with Jack Saideh, James Trappani, Lindsey DeFreese and Celia Wong concerning how Zeikos received the "store outs" data from Walgreen, and the limitations of the data Walgreen provided.

28.     I spoke with Lindsey DeFreese about Zeikos's questions to Walgreen about the "store outs" data, such as in the document annexed as Exhibits I through J.

29.     I confirmed with Jack Saideh, James Trappani, Lindsey DeFreese and Celia Wong that, aside from the photographs Zeikos took during store visits, all of Zeikos's knowledge on this topic came from Walgreen.

**Topic 7:   "Zeikos's knowledge of its failure to deliver Premium Merchandise ordered by Walgreens, including Zeikos' failure to deliver on time and failure to deliver at all."**

30.     As narrowed by Zeikos's objections, I was prepared to address this topic and engaged in the following work to prepare.

31.     I reviewed emails between Walgreen and Zeikos concerning shortages and/or late shipments, including emails previously marked as DX 60, DX 62, DX 64, DX 65, DX 75, DX 76, DX 77, DX 79, PX 49, PX 73, PX 73A, PX 548, and annexed hereto as Exhibit M.  I reviewed these emails not for the specific transactions involved, but to understand the parties' course of dealings regarding orders that were not delivered on time or in full.

32.     I reviewed a March 25, 2021, email from Kyle Navins at Walgreen regarding their "fill and kill" model, annexed as Exhibit N.

33.     I reviewed a December 29, 2020, email from Walgreen to its suppliers annexed as Exhibit O.

34.     I reviewed the Zeikos report bates stamped Z006529, that contains 47 columns and 13,017 rows, which is not annexed as an exhibit because of its size.  Accordingly, I did not review it column by column or line by line.

4

35. I reviewed the Zeikos report bates stamped Z006911, which is a supplement to the report Z006529 for a "PDQ" set of four Premium Merchandise products, and which is also not annexed as an exhibit because of its size. As with Z006529, I did not review it column by column or line by line.

36. I reviewed the invoice annexed as Exhibit P, which set forth the four product numbers for the "PDQ" set.

37. I reviewed two Cost Recovery Reports, annexed as Exhibits Q and R. As the reports contain 10 columns and more than 800 rows each, I did not review the reports line by line.

38. I spoke with James Trappani, Jack Saideh, Lindsey DeFreese, and Celia Wong about this topic.

39. I spoke with James Trappani, Jack Saideh, Lindsey DeFreese, and Celia Wong about the parties' course of dealings and what Mr. Navins referred to as Walgreen's "fill and kill" model.

40. I spoke with Lindsey DeFreese and Celia Wong concerning (i) the parties' course of dealings, including circumstances reflected in the emails I reviewed annexed as Exhibit M, (ii) the relevant columns of the spreadsheet bates stamped Z006529, (iii) the Cost Recovery Reports annexed as Exhibits Q and R, and (iv) the display for the "PDQ" set of products.

41. I spoke with James Trappani, Jack Saideh, Lindsey DeFreese, and Celia Wong about how Zeikos was short on some inventory for Walgreen's "opening order" because Walgreen had not sent Zeikos its product-by-product unit count projections in time for Zeikos to place corresponding orders with its supplier(s).

42. During a break in the deposition, I spoke with Celia Wong concerning the meaning of certain terms contained within the Cost Recovery Reports, and relayed that

information during the deposition, along with my notes from the call marked at the deposition as PX 620, and annexed hereto as Exhibit S.

**Topic 8**: **"Zeikos' financial performance between 2017 and 2022, including salaries and distributions, both direct and indirect to Jack Saideh and persons or entities related to him (including Topway LLC), as well as company expenses.**

43.     As narrowed by Zeikos's objections, I was prepared to testify about the general financial condition of Zeikos during the requested time period, and engaged in the following work to prepare.

44.     I reviewed the tax returns for Zeikos, Inc. for 2017, 2018, 2019, 2020, 2021 and 2022, annexed as Exhibits T through AA.

45.     I reviewed a document which lists the salary of every employee of Zeikos, including Jack Saideh, for 2018, 2019, 2020, 2021, 2022, and 2023, annexed as Exhibit AB.

46.     I spoke with Jack Saideh and confirmed that to the best of Zeikos's knowledge, the tax returns were accurate.

**Topic 9**: **"Zeikos' gross profit margin."**

47.     I was prepared to address this topic, and engaged in the following work to prepare.

48.     I reviewed the tax returns for Zeikos, Inc. for 2017, 2018, 2019, 2020, 2021 and 2022, annexed as Exhibits T through AA.

49.     I spoke with Jack Saideh and confirmed that to the best of Zeikos's knowledge, the tax returns were accurate, and could be used to calculate Zeikos's gross profit margin.

50.     I calculated the gross profit margin for each year.

**Topic 13:** **"Zeikos's knowledge of Premium Space Merchandise sales on or before April 2020."**

51.     I was prepared to address this topic, and engaged in the following work to prepare.

52.     Based on Zeikos's objection, I originally prepared for this topic interpreting "sales" to mean Zeikos' sales to Walgreen.  After speaking with counsel again in advance of the deposition, I then prepared for this topic interpreting "sales" as Walgreen's retail sales.

53.     I reviewed emails and attachments showing the type of "retail sales" data that Zeikos obtained from Walgreen, including documents previously marked as PX 115 and PX 115A, annexed as Exhibits AC through AE.

54.     I reviewed the February 12, 2020 email from Jack Saideh to Albert Gehrke, previously marked PX 93, annexed as Exhibit AF.

55.     I spoke with Jack Saideh, James Trappani, Lindsey DeFreese and Celia Wong, who explained that all Zeikos's knowledge on this topic came from Walgreen, and identified Lindsey DeFreese as the recipient of the information from Walgreen.  Lindsey DeFreese explained that she received some "retail sales" data for Zeikos's Premium Merchandise by email from a Walgreen's employee, Ben Moricette, and at some point she began downloading the reports herself through Walgreen's Suppliernet portal.  She identified Exhibit AE as representative of the format for the categories of retail sales data she could access from Walgreen prior to April 2020.

**Topic 16:** **"The bases and calculation of Zeikos's claimed damages in this case."**

56.     I was prepared to address this topic.

57.     I reviewed the contracts, previously marked as PX 56 (also marked as DX 86 at the deposition) and PX 119A, and annexed hereto as Exhibits B and C.

7

58.     I reviewed portions of the Third Amended Complaint in this action.  (Dkt. 105)

59.     I reviewed Zeikos's Third Supplemental Rule 26(a) disclosure of Zeikos, marked at the deposition as DX 96, and annexed hereto as Exhibit AG.  When I stated "I might have been given it, but I don't recall looking at it," (Tr. 245:6-11) I used overly literal language.  What I meant to convey was that I did not have a specific memory of looking at it, but I do not doubt that I had done so.  I understood that the document did reflect Zeikos's contention of its damages, and testified according to that understanding. (Tr. 252:15-18)

60.     I spoke with Jack Saideh and counsel for Zeikos about the factual basis and calculation for damages as follows.

61.     For the fraud claim,

(a)     repayment of the $7 million product placement fee because Zeikos values the contract at the time the fraud was committed, i.e. when Zeikos entered the October 7, 2019, Product Placement Agreement, at zero dollars,

(b)     prejudgment interest, and

(c)     punitive damages to be determined by the jury,

62.     For the breach of contract claim,

(a)     a refund based on clause 4 of the contract, which will depend on Walgreen's data which was still being analyzed, potential questions of fact regarding that data, and the application of a temporal element, and

(b)     prejudgment interest, and that

     (c)     Zeikos's damages claim was no longer based on lost profits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of October 2024.

Stephen M. Goldstein