# Exhibit AH



Robert M. Andalman
randalman@AandGlaw.com
TEL (312) 348-7629

June 3, 2024

**SENT VIA E-MAIL**

William Dunnegan (wd@dunnegan.com)
Laura Scileppi (ls@dunnegan.com)
DUNNEGAN & SCILEPPI, LLC
437 Madison Avenue, 24th Floor
New York, NY 10022

Re:   Zeikos, Inc. v. Walgreen Co. (23-cv-00303)
      Zeikos "Superseding" Rule 30(b)(6) Deposition Notice

Dear Bill and Laura:

I write to lodge Walgreen Co.'s ("Walgreens") objection to the "Superseding" Rule 30(b)(6) deposition notice that you sent to us on May 23, 2024. Let us know when you are available to meet-and-confer concerning these objections. In the meantime, Walgreens would not under any circumstance be in a position by June 17 (the noticed date) to produce witnesses who could speak to each of the 261 topics and sub-topics that the notice lists.

The notice is contrary to the Federal Rules of Civil Procedure as written and as interpreted and applied in the Seventh Circuit. Zeikos does not seem to have taken to heart any of the Northern District authorities we shared in April 2023, a year ago, after Zeikos sent us its first Rule 30(b)(6) notice, which though still overbroad was limited to under 70 parts and sub-parts. We describe Walgreens' specific objections below but among the notice's defects is its repeated failure to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The notice repeatedly seeks information that is not "relevant to any party's claim or defense and proportional to the needs of the case." *Putco, Inc. v. Carjamz Com Inc.*, No. 20 CV 50109, 2021 U.S. Dist. LEXIS 25488, at *2 (N.D. Ill. Feb. 10, 2021), quoting Fed. R. Civ. P. 26(b)(1). It further seeks a witness or witnesses to be prepared to speak to unspecified questions concerning the creation and contents of hundreds of documents – demands that violate the requirement for "required particularity" and which are further unduly burdensome. *See Ball Corp. v. Air Tech of Mich., Inc.*, 329 F.R.D. 599, 604-05 (N.D. Ind. 2019). In this respect, the notice is disingenuous, as it would require weeks to prepare a witness to testify about so many



documents whereas it would be impossible to ask about the creation and substance of so many documents during the 7-hour deposition for which the rule allows. This is particularly true when the "documents" requests are paired with dozens of additional topics.

Concerning both its "documents" topics; its demands for a witness knowledgeable about sales, shipping, product placement and inventory of 26 products in more than 7,000 stores over a nearly two-year period; and its demands for a witness to testify to all of the "factual and evidentiary bases" for all of Walgreens' affirmative defenses and multiple contentions in Walgreens' answer and its counterclaim, Zeikos' notice would require that a witness memorize thousands of pages of detailed financial and other documents. *See, e.g., Trydel Rsch. Pty. Ltd. v. ITW Glob. Tire Repair, Inc.,* No. 21 C 4977, 2024 U.S. Dist. LEXIS 90070, at *10 (N.D. Ill. May 20, 2024) ("There is no requirement that a Rule 30(b)(6) witness memorize thousands of pages of documents and be able to recall in exacting detail the minutia of such voluminous records."); *Bierk v. Tango Mobile, LLC,* No. 19 C 5167, 2021 U.S. Dist. LEXIS 33440, at *10-11 (N.D. Ill. Feb. 23, 2021) ("There is no requirement that a Rule 30(b)(6) witness memorize thousands of pages of documents and be able to recall in exacting detail the minutia of such voluminous records."); *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, No. 13 C 50041, 2013 U.S. Dist. LEXIS 97903, at *2 (N.D. Ill. July 12, 2013)(". . . Rule 30(b)(6) is not designed to be a memory contest . . . ."). As the Court has observed, "'that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand.'" *Trydel Rsch. Pty. Ltd.*, 2024 U.S. Dist. LEXIS 90070, at *10 (citation omitted). In the case where the Court made that comment, it described 103 deposition topics as a "staggering" number. Zeikos more than doubles that with its "superseding" notice.

While portions of the notice are thus overbroad, other portions misuse Rule 30(b)(6) to either seek follow up questions left unanswered from prior fact depositions or to seek cumulative and duplicative testimony concerning specific communications or actions when the participants and actors involved have all been individually deposed. *See, e.g., Doxtator v. O'Brien*, No. 19-C-137, 2020 U.S. Dist. LEXIS 121445, at *5 (E.D. Wis. July 10, 2020) (granting protective order and observing that, "[D]iscovery of the specific facts surrounding an isolated event are not the kind of information that Rule 30(b)(6) is intended to address. Rule 30(b)(6) notices are used to obtain 'information known or reasonably available to the organization,' not the personal knowledge of easily identified individuals."); *Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) (observing that "the Court doubts a Rule 30(b)(6) witness should be allowed to testify about the details of a car accident in lieu of the corporation's truck driver who actually witnessed the event"). This goes to the purpose of Rule 30(b)(6), which is to obtain testimony of an organization's knowledge and not to duplicate testimony of known individuals concerning what those individuals observed, intended or said – or the basis of those individual's statements. In this regard, Rule 30(b)(6) is subject to the limitation of Rule 26(b)(2), which protects parties from discovery that is "unreasonably cumulative, duplicative, or burdensome …."



Additionally, the notice asks for a witness to state the "factual and evidentiary" basis for Walgreens' legal positions. Many of the topics that request this are duplicative of contention interrogatories that Zeikos has served asking the same thing. While Walgreens is willing to answer the contention interrogatories, it is not appropriate to ask a lay witness to be prepared to detail the evidence that Walgreens lawyers intend to marshal to support its case. This is consistent with the practice in the Northern District of Illinois. *See, e.g., CenturyLink Commc'ns LLC v. Peerless Network, Inc.*, No. 18 C 3114, 2020 U.S. Dist. LEXIS 260276, at *8 & *14-15 (N.D. Ill. Jan. 28, 2020) (noting that "30(b)(6) topics calling for representative deponents to address legal contentions or conclusions are disfavored" and holding that inquiry into "the legal and factual basis" of particular claims as better suited for contention interrogatories. *Id.* at *14-15.

More specifically, Walgreens objects as follows:

### Topics that Seeks A Witness on the Subject of "Documents"

As noted, a Rule 30(b)(6) topic lacks the required particularity when it simply demands a witness on the subject of a document, without specifying the subject matter of questions for which the witness is required to prepare concerning the document. This is particularly burdensome and unfair when the notice identifies hundreds of lengthy documents the details of creation and contents of which no witness or group of witnesses could reasonably be expected to familiarize themselves. The following topics fall within this category:

Topic 5: This topic seeks a witness to testify to unspecified subjects about unspecified "documents" concerning gross sales of products by a different vendor between September 2017 and May 2019. Walgreens cannot determine from this topic what subjects a witness would be expected to answer questions about with regard to those documents.

Topics 7 and 17: Topic 7 seeks a witness to testify to unspecified subjects about unspecified "documents" concerning the prices Walgreens charged its customers for non-Zeikos products during the two-year period before the Zeikos contract at issue in this case. Topic 17 seeks a witness to testify to unspecified subjects about unspecified "documents" concerning the cost to Walgreens of those products purchased during that same period. Not only are neither the documents nor the subject of questions about them identified, but the prices charged customers or that Walgreens was charged for different products made by a different vendor over a two-year period before the contract in this case have no relevance here, particularly when balanced against the extreme burden of preparing a witness to testify meaningfully about all aspects of such documents.

Topics 11-12: These topics seek a witness to testify to unspecified subjects about unspecified "documents," identified only by Zeikos' assertion that they were given to Mr. Gehrke before October 19, 2019, and concern the sale of products from the premium space (Topic 11), or that Mr. Gehrke "examined" (Topic 12). Concerning Topic 12, Mr. Gehrke was



deposed and identified no such documents so it is impossible to know even what documents are referenced in Topic 12, let alone what subjects it expects a witness to testify about.

Topic 16: This topic seeks a witness to testify to "[e]ach agreement" Walgreens had with any other vendor, without limitation on subject matter or time, for a product placement, "including but not limited to" certain deals to which Mr. Gehrke or Ms. Hughes testified. No subject matter is identified as the focus of questions about these agreements. Neither are the terms of Walgreens' contracts with other vendors relevant to any claim or defense in this case. Finally, the law in this District is clear that formulation of Rule 30(b)(6) topics in terms that identify a broad subject "including but not limited to" sub-categories, as Zeikos does here, fails to satisfy the particularity requirement of the rule. *CenturyLink Commc'ns LLC v. Peerless Network, Inc.*, No. 18 C 3114, 2020 U.S. Dist. LEXIS 260276, at *6 (N.D. Ill. Jan. 28, 2020) ("Courts also have frowned on 30(b)(6) notices that describe the topics with the term 'including but not limited to.'").

Topics 34-38, 40, 44-47, 55-56 & 71: These topics seek a witness to testify to unspecified subjects about unspecified "documents" that concern the placement in more than 7,000 stores of 26 different Zeikos products, inventory levels in each store, and Walgreens' sales of those products, in dollars and units, in some cases by day or week, from individual stores over a nearly two-year period. These requests are absurdly overbroad and non-specific.

Topics 48-51: These topics seek a witness to testify to unspecified subjects about unspecified "documents" concerning mylar labels in thousands of stores over a nearly two-year period, to include which addresses had which mylar labels on which dates. They fail the particularity requirement of Rule 30(b)(6).

Topics 59-60: These topics seek a witness to testify to unspecified subjects about unspecified "documents" that concern Walgreens inventory of Zeikos premium space products by product, day, week, or month, presumably by store. Again, the requests are overbroad and non-specific.

Topic 81: This topic seeks a witness to testify to unspecified subjects about unspecified "documents" that Zeikos states concern products that Walgreens reordered after Zeikos could not fulfill prior purchase orders as a result of its lack of inventory. Walgreens cannot determine from the request what topics about will be asked about concerning what documents.

Topic 83: This topic seeks a witness to testify to unspecified subjects about unspecified "documents" concerning Zeikos "on time fill rate". Again, Walgreens cannot determine from the notice what will be asked about what documents.

Topic 87: This is the most egregious request in this category, seeking a witness who can testify to the "creation of, and the meaning of, the columns and rows" on 160 spreadsheets, which combined include tens (or even hundreds) of thousands of rows of data.



For most of these topics, the "documents" referred to are not identified. For all of them, the subject matters of questions are not stated. Individually and in total, these requests would require extraordinary memorization of massive data sets involving literally millions of data points, in addition to learning and memorizing the provenance of hundreds of documents. These requests wholly fail the test of particularity and are facially unduly burdensome.

### Topics That Seek Information for Which Walgreens Has No "Organizational Knowledge" Separate From The Individuals Already Deposed

Rule 30(b)(6) provides for testimony "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The rule is intended to streamline discovery by requiring organizations to identify persons with knowledge rather than "bandying," *i.e.*, presenting witnesses who all disclaim personal knowledge of a fact known by some unidentified person in the organization. Corporate representatives testify to matters known to the organization. *See Smithkline Beecham Corp. v. Apotex Corp.*, 98 C 3952, 2000 U.S. Dist. LEXIS 667, at *24-25 (N.D. Ill. Jan. 21, 2000) (describing purpose of Rule 30(b)(6)). Zeikos turns this purpose on its head, repeatedly asking for a corporate representative on matters for which there is no organizational knowledge separate from the knowledge of specific individuals about specific events or statements by those individuals. This is improper. *See Doxtator*, No. 19-C-137, 2020 U.S. Dist. LEXIS 121445, at *5. In most cases, Zeikos does so after taking the known, specific specific individuals depositions such that further questioning would be duplicative, cumulative or else an improper attempt to depose the individuals twice on the same subjects. The following topics are in this category:

Topic 1: This topic seeks a witness to testify about "[t]he negotiation of the Product Placement Agreement, including the representations that Walgreen made to Zeikos before October 17, 2019 …." However, as Zeikos knows, Albert Gehrke is the only person on the Walgreens side who negotiated the Product Placement Agreement and made representations to Zeikos during those negotiations. *See* Trappani Tr. at 81:15-23 (asked about Product Placement Agreement, "Q. And who did you negotiate with? A. Albert.") As such, only Mr. Gehrke has knowledge of those negotiations and what he said during them. Mr. Gehrke was deposed for 7 hours and Zeikos has his recollections of the negotiations and his statements, which were the subject of questions throughout that deposition.

Topic 2: This topic seeks a witness about the contents of Mr. Gehrke's communications before October 7, 2019, with representatives of other companies concerning a potential contract to place their products in the premium space for which Zeikos ultimately contracted. Again, this is a question for Mr. Gehrke and was a subject in his deposition.

Topic 9: This topic seeks for a witness on the topic of "communications between Albert Gehrke and Denise Suhadja on or about July 19, 2019, that referred to clone WICs." You have deposed both these individuals and had the opportunity then to ask them what they recall about their communications with each other on this subject on or about that date.



Topics 19 & 32: Topic 19 seeks a witness to testify about Walgreens' intent to seek a waiver or release from Zeikos when it entered the Amended Product Placement Agreement and Topic 32 seeks a witness on the subject of "[t]he negotiation and execution of the Amended and Restated Product Placement Agreement." The subject agreement was executed by Heather Hughes, whom Zeikos deposed. It was negotiated by Mr. Gehrke, with involvement of his supervisors, Ms. Corbett and Ms. Hughes. Thus, with the exception of Walgreens' legal counsel, whose involvement is subject to attorney-client privilege, Zeikos has taken the deposition of every person at Walgreens with knowledge of the noted negotiations and contract execution. Walgreens has no organizational knowledge of these events separate from the persons Zeikos has deposed on these very subjects.

Topic 20: This topic asks for a witness to testify about oral and written statements to Zeikos after October 7, 2019, and before April 22, 2020, on three subtopics, concerning Walgreens performance under the Product Placement Agreement, Walgreens sales of products from the premium space prior to May 14, 2019, and Walgreens' projections of Zeikos' sales from the premium space for the first year of the Product Placement Agreement. While the actual statements that are the subject of this topic are not identified, including the number of statements or the dates thereof, discovery has demonstrated that the Walgreens personnel communicating with Zeikos would have been Mr. Gehrke and, to a lesser extent, Ms. Corbett, Ms. Hughes, and Ms. Suhadja, all of whom you have deposed.

Topic 21: This topic asks for a witness about "the basis" of a specific sentence written by Amanda Corbett of Walgreens to Mr. Saideh of Zeikos on a specific date. Zeikos has deposed Ms. Corbett about that statement.

Topic 22: Similar to Topic 21, this topic asks for a witness concerning the factual basis for a specific statement in a specific email sent by Ms. Corbett to Mr. Saideh. Zeikos deposed Ms. Corbett about this statement and that email.

Topics 24-26: Topics 24-26 seek a witness to testify to the knowledge about this case of three specific individuals, mainly, Tracey Brown, Walgreens' Chief Customer Officer since October 2021; Lanesha Minnix, Walgreens' General Counsel since February 2024; and Timothy Wentworth, Walgreens' CEO since October 2023. First, the knowledge of specific individuals not a proper Rule 30(b)(6) topic. This is particularly the case here where none of these individuals was associated with Walgreens during the relevant period in this case. Moreover, this is clearly an attempt to take discovery about the knowledge of high-ranking Walgreens' officers who were not employed by Walgreens at any time during the parties' relationship which is further barred by the "apex doctrine," pursuant to which "[c]ourts have not hesitated to block efforts to depose high-ranking officials where . . . the officials do not have unique personal knowledge of the facts underlying the events that lead to the lawsuit in question.'" *Full Circle Villagebrook GP, Ltd. Liab. Co. v. Protech 2004-D, Ltd. Liab. Co.*, No. 20 C 7713, 2022 U.S. Dist. LEXIS 201730, at \*10 (N.D. Ill. Nov. 2, 2022). None of the identified persons have knowledge of facts that "lead to the lawsuit in question"; none were employed by Walgreens, let alone involved in the underlying events, during any period relevant to this case.



Topic 67: This topic asks for a witness on the subject of the negotiation of the "January 2021 Agreement." Again, whatever agreement was reached then between the parties as negotiated for Walgreens by Mr. Gehrke, as supervised by Ms. Corbett and Ms. Hughes, each of which has been deposed on the subject.

Topic 76: This topic asks for a witness who can testify to the "basis for the statements of Kyle Nivens of Walgreens in his e-mail to Lindsay DeFreese of Zeikos on March 25, 2021 ...." This is properly the subject of deposition of Mr. Nivens. It is not a proper Rule 30(b)(6) topic as only Mr. Nivens can testify to the basis for his own statements. We note that to the extent this topic is actually seeking a corporate representative to testify to any policy of cancelling unfilled purchase orders after some period of time, which appears to be the subject of Topics 75-76, Walgreens is willing to provide a corporate representative to testify to that subject so long as those topics are clarified. As written, Topic 74 refers to "Walgreen's policy known as the 'fill or kill' model," whereas Walgreens does not have a policy with that name.

### Topics that Seek Legal Conclusions and Function as Contention Interrogatories

Walgreens is willing to answer contention interrogatories but it is not reasonable, and is unduly burdensome, to expect a lay witness to be in position to set out the "factual and evidentiary" basis for so many subjects, as set forth in the notice. This includes:

Topic 68: This asks for a witness to provide the "factual and evidentiary basis" for Walgreens' denial of 25 different paragraphs of Walgreens' answer to the Third Amended Complaint.

Topic 69: This asks for a witness to provide the "factual and evidentiary basis" for each of the 9 affirmative defenses that Walgreens made to the Third Amended Complaint.

Topic 70: This asks for a witness to provide the "factual and evidentiary" basis for Walgreens allegations in seven of the paragraphs in its counterclaims.

Topic 80: This asks for a witness to provide the "factual and evidentiary" basis for Walgreens' contention that it would have sold more products to its customers had Zeikos not breached the parties' agreement by failing to deliver the products that Walgreens did order.

A number of these topics are already the subject of contention interrogatories served by Zeikos on May 17, 2024. Walgreens will answer those and is further willing to provide answers to these topics setting for the basis of its contentions in the identified paragraphs of its Answer, Affirmative Defenses, and Counterclaim. It is not, however, appropriate here to expect a lay witness to memorize all of the basis for dozens of positions that Walgreens has taken in its answer to Zeikos' prolix complaint, in Walgreens' affirmative defenses, and in its counterclaim.



Another topic related to these is <u>Topic 15</u>. It seeks a witness to testify the "factual and evidentiary" basis of any contention by Walgreens concerning what Zeikos considered in deciding whether to enter the Product Placement Agreement, including reliance on statements of prior sales from the Premium Space, which statements Walgreens specifically denies were made. In addition to improperly seeking a witness to testify to Walgreens' organizational knowledge of Zeikos' subjective thought process, this request builds in a false assumption that renders the formulation of the topic impossible to respond to – a defect that infects other topics, as discussed below. Walgreens cannot be expected to respond to a deposition topic that is actually just an argument in disguise.

### Topics that Seek Irrelevant Information

Rule 30(b)(6) topics, like all discovery, must be relevant to a claim or defense in the case. *See, e.g., Black v. Hernandez*, No. 18 C 6518, 2021 U.S. Dist. LEXIS 257135, at *5 (N.D. Ill. Mar. 10, 2021) (denying motion to compel deposition because "Plaintiff, however, has failed to show that the requested Rule 30(b)(6) topics are relevant to any claims or defenses in the case."). Zeikos' notice violates this requirement in multiple requests, including specifically:

<u>Topic 10</u>: This topic asks for a witness to testify to Walgreens' knowledge of "Phantom Inventory" of a prior provider's products between March and October, 2019, prior to the contract with Zeikos. What about the Phantom Inventory Zeikos hopes to ask is not specified but regardless any such inventory is irrelevant to any claim or defense in this case.

<u>Topic 13</u>: This topic asks for a witness to testify to any write-off or other deduction Walgreens took on its books concerning prior provider's products. Again, that is not relevant to any claim or defense in this matter.

<u>Topics 23 & 27</u>: Topic 23 asks for a witness to provide the identity of each "Corporate or Divisional Officer" of Walgreens or its parent company, Walgreens Boots Alliance, who has ever learned of statements made in phone calls that Zeikos illegally recorded in February 2020, Zeikos' allegation in paragraph 94 of its complaint that excerpt portions of those illegal recordings, or Walgreens' answer to those allegations. Topic 27 seeks a witness who could testify to any "action taken" by such persons in response to the statements. First, the notice defines "Corporate or Divisional Officer" to include any employee whose title includes the words "Vice President," a definition that captures dozens if not hundreds of persons who are not in fact officers of either Walgreen Co. or its parent. Second, there is no basis to take discovery in this case from Walgreens parent company. Finally, there is no relevance to any claim or defense in this matter to the identity of who at Walgreens learned of Zeikos' allegations or what their responses have been. None of this, including who at the company is familiar with Zeikos' illegal wire recordings, has any bearing on the case.



**Topic 28**: This topic asks for a witness to testify to Heather Hughes' authority to sign the Amended and Restated Product Placement Agreement. There is no dispute in this case that the subject agreement is a valid and enforceable contract. To the contrary, Zeikos alleged that: "By a written agreement fully executed on April 20, 2020, Walgreen and Zeikos entered into the Amended and Restated Product Placement Agreement …." Zeikos Third Amend. Compl. ¶ 115, Dkt. 105; Walgreens Answer ¶ 115, Dkt. 134 (admitting that the parties entered the Amended and Restated Product Placement Agreement). There is no dispute that the agreement is binding or that Ms. Hughes – who testified that she is one report away from Walgreens' CEO – had authority to sign it.

**Topics 29-30**: Topic 29 assumes that there have been "hotline" reports about Mr. Gehrke's conduct as a Walgreens employee and seeks a witness to testify to the number of such reports that have ever occurred, without time limitation. Topic 30 seeks a witness to testify to the number of times any Walgreens employee has reported any other employee for violating any portion of Walgreens' Code of Conduct, for any reason, at any time in the five years since May 14, 2019. Neither of these subjects has any relevance to any claim or defense in this case. Furthermore, Topic 30 is framed in terms of reports "including but not limited to" any "hotline" claims and would be impossible to determine for a company like Walgreens, which has hundreds of thousands of employees.

**Topic 31**: This topic assumes that certain specific verbiage from Walgreens' 2014 Code of Conduct was "deleted" from later versions of that Code of Conduct and asks for a witness to be prepared to discuss this supposed change. The specific verbiage of Walgreens' Code of Conduct provides has no bearing whatsoever, however, on any claim or defense in this case.

**Topic 65**: This topic seeks a witness about Walgreens' disposition of its inventory of Private Label Products after October 2019. This is a request regarding the Infinitive products. How these non-Zeikos products were disposed of has no bearing on any claim or defense in this matter.

**Topic 72**: This topic seeks a witness about Walgreens' statements in SEC filings about claims or potential claims against suppliers for failure to deliver goods. Such public statements about disputes with other vendors, however, like Walgreens disputes with other vendors generally, are simply irrelevant to this dispute between Walgreens and Zeikos. Moreover, no such statements are identified. While we have not scoured the SEC filings of Walgreens, or its parent entity Walgreens Boots Alliance, over the years (no temporal limitation is provided in the topic), it seems highly unlikely that any such dispute would rise to the level of materiality that would result in such disclosure.

**Topic 79**: This topic seeks communications between Walgreens and Cotiviti both prior to August 25, 2018, and between October 28, 2020 and November 2, 2021 with any connection to



Zeikos. However, the only relevant communications are those that are part of Walgreens' counterclaim, as opposed to ten years of communications at all referencing Zeikos. Walgreens will produce a witness to testify about communications Walgreens had with Cotiviti with regard to the debit memos listed on WAG13402. This is consistent with Walgreens' agreement to limit Zeikos' search for debit memos to those listed on WAG13402. *See* R. Blackburn 4/17/24 email.

**<u>Topics That Include False Assumptions</u>**

The notice also includes topics that build in false assumptions, which render any meaningful preparation of a witness impossible. Specifically:

<u>Topic 3</u>: This topic seeks a witness about projections that Walgreens made before October 7, 2019, for sales of Zeikos products from the Premium Space. In fact, there were no such projections.

<u>Topic 4</u>: This topic seeks a witness on the gross dollar or approximate gross dollar amount of Infinitive products sold from the Premium Space between September 2017 and October 2019. As witnesses have testified, this is not information that Walgreens has or had.

<u>Topic 6</u>: This topic asks for a witness who could testify to the assumptions Walgreens made in 2019 referred to by Ms. Hughes at pages 47-49 in her deposition. However, Ms. Hughes did not testify that Walgreens made any assumptions at that time. The questions asked to her was whether she herself had an understanding in July 2019 of what prior sales had been from the 010 space. What she recalled is that doing so would require assumptions to be made but she did not recall what those were specifically. At Zeikos' urging, she then speculated about what those assumptions might have been, which would themselves have resulted in only a speculative basis to guess at prior year sales from that space. Walgreens has no organizational knowledge of what Ms. Hughes meant by her statement of what she would have assumed.

<u>Topic 8</u>: This topic asks for a witness to testify to Walgreens' forecasts, for the period July to October 2019, of changes in expected sales of Zeikos products compared to clone WICs for those products. This assumes such a forecast was conducted. We are aware of no evidence that this occurred and so are at a loss of what Zeikos expects to ask about under this topic or how to prepare a witness for such questions.

**<u>Zeikos Attempt to Take "Discovery about Discovery"</u>**

<u>Topic 57</u>: This topic seeks a witness to testify to Walgreens efforts to respond to Zeikos RFP 46. As we have explained during meet-and-confer about that topic, the records that it sought involving shipments of Zeikos products to Walgreens stores from Walgreens distribution centers were ultimately located among archived materials and they have been produced now. There is no



William Dunnegan
Laura Scileppi
June 3, 2024
Page 11

basis to conduct this "discovery about discovery," which is generally disfavored in the Northern District of Illinois. *See, e.g., LKQ Corp. v. Kia Motors Am., Inc.*, 2023 U.S. Dist. LEXIS 115804, at *1 (N.D. Ill. July 6, 2023) (concluding discovery on discovery "should be rare and certainly the exception, not the norm"); *Downing v. Abbott Lab'ys*, 2017 U.S. Dist. LEXIS 181401, at *1 (N.D. Ill. Nov. 2, 2017) ("While '[t]here are circumstances where [ ] collateral discovery is warranted,' a party must proffer 'an adequate factual basis for [her] belief that the current production is deficient.'") (internal citations omitted); *Gross v. Chapman,* 2020 U.S. Dist. LEXIS 133008, 2020 WL 4336062 at *2 (N.D. Ill. July 28, 2020) (same, collecting cases).

Walgreens is ready to meet and confer with you concerning these objections. Walgreens cannot identify its witness or witnesses or discuss scheduling until these objections are resolved. Hopefully, we can do so through our discussions but otherwise with the Court's assistance.

Sincerely,

Robert M. Andalman

Cc: Annette M. McGarry (amm@mcgarryllc.com)
Marianne C. Holzhall (mch@mcgarryllc.com)