IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZEIKOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Case No. 1:23-cv-00303 <br><br> Hon. Virginia M. Kendall <br><br> Magistrate Judge Keri L. Holleb Hotaling |

### WALGREEN CO.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE DECLARATION OF WILLIAM DUNNEGAN OR, IN THE ALTERNATIVE, TO DISQUALIFY DUNNEGAN AS COUNSEL IN THIS CASE

In support of its Motion to Strike the Declaration of William Dunnegan or, in the Alternative, to Disqualify Him as Counsel, Walgreens cited controlling authority holding that summary judgment cannot be supported or opposed based on a lawyer's declaration that purports to interpret documents about which the lawyer lacks personal knowledge. Dkt. 218 at 10-11. Walgreens also cited cases striking declarations and exhibits that attempt to evade this rule through a lawyer-created FRE 1006 "summary" that is based on counsel's picking and choosing data about which he lacks personal knowledge and for which no foundation has been laid. *Id.* at 13-14.

In response, Zeikos admits its counsel lacks personal knowledge about the conclusions he draws or the documents he purports to "summarize" in his declaration. Zeikos stands on its counsel's conclusions even where it concedes the data he relied upon was inaccurate. It makes no attempt to suggest how counsel established a foundation for the Excel workbooks on which his conclusions are based. Zeikos cannot do so, because its counsel has admitted he does not know who created the workbooks or for what purpose. *See* Dkt. 218 at 2-3, 4, 5-6 & 7 (citing counsel's testimony). In sum, Zeikos suggests no lawful basis for counsel's declaration to be considered

consistent with Fed. R. Civ. P. 56(c)(4), whose requirements of personal knowledge and admissible evidence the response also does not mention. Neither does Zeikos cite authority that would permit counsel to continue as counsel for Zeikos where he had made himself a witness, in the event the Court does review his declaration.

For these reasons, counsel's declaration is properly stricken, except to the extent it merely identifies copies of transcripts or the fact that documents with particular Bates-number ranges were produced. If the declaration is not so stricken, counsel should be disqualified.

### I. Walgreens' Motion to Strike Does Not "Contravene" L.R. 56.1(e)(2)

Contrary to Zeikos' lead argument, LR 56.1(e)(2) does not forbid motions to strike. Dkt. 221 at 1. The rule expresses a preference for inclusion of arguments about striking evidence in summary judgment responses, as Walgreens noted in its opening brief, but when the circumstances call for it, motions to strike like this one are routinely considered, and granted, in this District and by this Court. *See e.g.*, *Coffee v. Menard, Inc.*, No. 13 C 2726, 2015 U.S. Dist. LEXIS 37454, at *1 (N.D. Ill. Mar. 25, 2015) (Kendall, J.) (granting motion to strike and denying separate motion for summary judgment). "A motion to strike should succeed when it removes unnecessary clutter from the case, and thus expedites rather than delays resolution on the merits." *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 842, 852 (N.D. Ill. 2018) (striking part of a summary judgment affidavit that was not based upon personal knowledge) (quotes and citation omitted). That is the purpose of Walgreens' motion. Zeikos' partial summary judgment motion depends on the conclusions of counsel about what is "demonstrated" or "shown" by Excel documents counsel does not even purport to know about personally. If his declaration is stricken, the partial summary judgment motion is properly denied, as *Zeikos puts forward no other substantive evidence*.

2

Moreover, because of the affirmative relief sought in the alternative here (that is, counsel's disqualification) a separate motion was required.

    **II.**    **The Response Fails to Show Counsel's Declaration Satisfies the Requirements of Fed. R. Civ. P. 56(c)(4)**

Walgreens does not challenge the few paragraphs in counsel's declaration that identify deposition transcripts or state that particular documents were produced in discovery. *Id.* at 11. Rather, at issue are counsel's attempts to state as fact what certain Excel workbooks "demonstrate" or "prove" when: (a) counsel undisputedly has no personal knowledge of the facts in those workbooks; (b) where neither Zeikos nor its counsel have any knowledge of the purposes for which those workbooks were prepared, who prepared them, or what they purport to show; and (c) where Zeikos nowhere attempts to set out foundational facts that would support consideration of the workbooks in the first place. As the Court observed when the motion was presented, the work of counsel's declaration would normally be done by an expert or Rule 30(b)(6) witness. It is contrary to Fed. R. Civ. P. 56(c)(4) and the precedent Walgreens previously cited, *see* Dkt. 218 at 10-11, for a party to attempt to substitute its counsel in this role.

    **A.**    **Zeikos Admits Counsel Lacks Personal Knowledge**

Zeikos does not contest that its counsel lacks personal knowledge about the workbooks at issue, or even what the data in those workbooks shows or does not show. Yet Zeikos cannot dispute that such personal knowledge is required by Fed. R. Civ. P. 56(c)(4). *Compare* Dkt. 218 at 9-11, collecting cases. Indeed, while asking the Court to rely on his testimony upon summary judgment, Zeikos states it "will not call Dunnegan as a trial witness because he has *no knowledge* that would require any testimony from him." Dkt. 221 at 3 (emphasis added). But it is black-letter law that "[t]estimony about matters outside personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary

3

judgment." *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (*en banc*) (affirming disregard of affidavits from witnesses without personal knowledge). Ultimately, this is why courts strike or disregard affidavits or declarations by counsel like that here. Dkt. 218 at 9-11, citing cases. As noted, Zeikos cannot distinguish these cases and the response makes no attempt to do so.

Instead, Zeikos' argument is that its counsel's statements – based on sorting, selecting, and excluding data from the Excel workbooks he does not have a basis to understand – are nothing more than "reasonable inferences" from "facts presented to the Court." Dkt. 221 at 2. Zeikos made this same argument to the Court at the presentment. However, neither in the response nor before the Court did Zeikos cite any authority in support of it. The response refers to Walgreens' observation that personal knowledge can include inference, *id.*; but it ignores the authority cited and discussed at the cited portion of Walgreens' brief, which holds that such inferences must be "'grounded in observation or other first-hand personal experience.'" Dkt. 218 at 9-10, citing *Visser*, 924 F.2d at 659 (striking affidavits upon summary judgment and stating clearly that "witnesses who are not expert witnesses … are permitted to testify only from their personal knowledge"). Here, again, there is no dispute counsel is not an expert and lacks personal knowledge concerning the data about which he attests.

B.  **The Declaration Fails to Present Facts to the Court**

While the response does not identify what "facts presented to the Court" are demonstrated by admissible evidence in counsel's declaration, this appears to be a reference to four Excel workbooks that the declaration identifies as having been produced in discovery. The declaration does not stop at identifying the workbooks as having been produced, but goes on to attest to what counsel contends the workbooks "purport" to "prove" or "demonstrate" about mylar labels in

4

Walgreens stores, Walgreens' fixtures and placement of products in its stores, Walgreens' sales, and Walgreens' inventory – all matters about which counsel then draws conclusions. As discussed in Walgreens' opening brief, and not disputed by Zeikos in the response, counsel has no actual knowledge about what any of these workbooks actually are. *See* Dkt. 218 at 2-8. In some cases, he did not know whether the document showed what had happened or was a planning document. *Id.* at 3 (regarding mylar labels). In another case, he could not say what a "subscription list" even was. *Id.* at 218 at 5-7. In other cases, counsel did not relay "facts" stated in the workbooks but rather manipulated the data, selecting some, deleting others, and then applying Excel formulas he could not explain to support his conclusions. *Id.* at 4-5 (regarding sales data); *id.* at 7-8 (regarding inventory data). Counsel could not testify to the purposes of the Walgreens' workbooks or their accuracy – and concedes the inaccuracy of the underlying inventory data. *Id.* at 2-8. On their face, these workbooks provide data but without being explained, they do not present "facts" to the Court. Instead, what Zeikos has done is have its counsel select, filter, and manipulate the data to construct an argument about what, in his lay opinion, the workbooks "demonstrate" or "prove." This is precisely what the case law Walgreens cited in opening prohibits. Again, Zeikos makes no attempt to distinguish those authorities.

It is also material that the declaration makes no attempt to lay a foundation for the workbooks themselves. This is not a mere "quibble about the admissibility of evidence," as the response suggests. Rather, it is a requirement that summary judgment motions be supported by admissible evidence – a requirement that Zeikos ignores both in its motion and in its response to Walgreens' motion to strike. *See* Dkt. 218 at 12; Fed. R. Civ. P. 56(c)(4); *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023) ("To be considered on summary judgment, evidence must be admissible

5

at trial, …. If the evidence is inadmissible hearsay, the courts may not consider it [on summary judgment].")

The response concedes, as counsel admitted at his deposition, that Zeikos cannot show that any of these workbooks are business records, exempt from the hearsay rule pursuant to FRE 803(6). Instead, it asserts without discussion, analysis or support that the workbooks are admissions of a party opponent. Dkt. 221 at 2.[1] This undeveloped argument is properly ignored entirely. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (where a party "do[es] not cite any applicable legal authority or provide support" for a proposition, the "undeveloped argument is waived"); *Crespo v. Colvin,* 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Zeikos' unsupported premise appears to be that any document produced by Walgreens in discovery, including the subject workbooks, is automatically non-hearsay pursuant to FRE 801(d)(2)(A). However, this confuses authentication pursuant to FRE 901 with admissibility pursuant to FRE 801(d)(2). *See, e.g., Floyd v. City of Spartanburg S.C.*, No. 7:20-cv-01305-TMC, 2023 U.S. Dist. LEXIS 202176, at *20 n.12 (D.S.C. Aug. 29, 2023) (rejecting the same argument as to spreadsheet produced in discovery and stated "[i]t is true that documents produced by a party in discovery are presumed to be authentic …. Nonetheless, 'authentication evaluates the genuineness of a document, not its admissibility'"); *Lemmon v. City of Akron*, No. 5:16-cv-2356, 2018 U.S. Dist. LEXIS 84085, at *19 n.3 (N.D. Ohio May 18, 2018) (striking evidence on

---

[1] Zeikos twice cites FRE 801(d)(1), which concerns impeachment of a declarant with a prior inconsistent statement. The rule it apparently meant to cite is FRE 801(d)(2).

6

summary judgment and stating the fact that documents "were produced during discovery does not cure the fact that they may contain inadmissible hearsay").

The proponent of any evidence, including putative party admissions, bears the burden of establishing the foundation for that admission, including on summary judgment. In the case of FRE 801(d)(2) statements made by an employee of a party, as in the case for the workbooks here, this means demonstrating that each statement in each workbook concerned a matter within the scope of the workbook's author's employment in a context where the declarant's employment with Walgreens compelled the declarant to make that statement. Without that foundation, the statement is simply not admissible as a party admission. *See Waugaman v. Univ. of Chi. Hosps.*, Case Number: 00 C 2581, 2002 U.S. Dist. LEXIS 5233, at *22-23 (N.D. Ill. Mar. 27, 2002) (excluding putative admission for want of foundation); *Olech v. Vill. of Willowbrook*, No. 97 C 4935, 2002 U.S. Dist. LEXIS 19578, at *5 (N.D. Ill. Oct. 10, 2002) (excluding statement because proponent failed to demonstrate that statement of employee fell within scope of employment, which the Seventh Circuit interprets to mean the declarant was compelled by her employment to make the statement); *see also Cimino v. Fleetwood Enters.*, 542 F. Supp. 2d 869, 881 (N.D. Ind. 2008) (excluding statement because, "[e]ven if the technician was an agent or servant, the Plaintiffs have failed to establish the scope of the agency or employment relationship").

Here, neither in counsel's declaration nor otherwise does Zeikos provide any foundational facts about these workbooks, and indeed counsel admitted at his deposition he did not know the author, the custodian, or the reason why the workbooks were created. *See* Dkt. 218 at 2-8. The declaration certainly contains no foundational facts about the scope of employment of the workbook's authors or whether that employment compelled the workbooks' creation. It could not, because counsel lacks any personal knowledge on any of these subjects. *See Middleby Corp. v.*

7

*Hussmann Corp.*, No. 90 C 2744, 1993 U.S. Dist. LEXIS 6150, at *19 (N.D. Ill. May 5, 1993) (witness "cannot testify to the substance of [document] if he lacks personal knowledge").

Critically, the response also does not address the substance of Walgreens' point that FRE 1006 is "not an end around to introducing evidence that would otherwise be inadmissible" and that a "proper foundation [must be laid] as to the reliability of the [underlying] records." Dkt. 218 at 11-12, citing cases. The response further does not address, let alone distinguish, the authorities Walgreens cited that hold when a lawyer exercises judgment to manipulate, filter or select information from a document, the result is not an FRE 1006 summary at all. *Id.* at 12 (citing *Needham v. White Labs., Inc.*, 639 F.2d 394, 403 (7th Cir. 1981) (reversing admission of summary and stating, "Before a summary is admitted, the proponent must lay a proper foundation as to the admissibility of the material that is summarized and show that the summary is accurate."); *id.* at 13 (citing *EEOC v. DHL Express USA, Inc.*, No. 10 C 6139, 2018 U.S. Dist. LEXIS 250994, at *7-8 (N.D. Ill. July 19, 2018) (striking purported summaries, including because counsel in the case had exercised "some degree of judgment in order to select the criteria that he did" and "this selection alone takes Exhibits B and C outside of Rule 1006's scope").

Another example of this consistent case law is *Kuebler v. NuCare Servs. Corp.*, in which (as here) "Plaintiffs' counsel created charts that supposedly summarize[d] the information he gathered from the [defendant's] spreadsheets." 2016 U.S. Dist. LEXIS 32471, at *5 (N.D. Ill. Mar. 14, 2016). The court "assume[d], *arguendo*" that even if the spreadsheets were construed as Rule 801(d)(2) admissions, "the second level of hearsay—creation of the summary charts by Plaintiff's attorney—is not excepted by Rule 1006." *Id.* at *7. The court went on to discuss counsel's manipulation of the data in the underlying spreadsheets and his failure to establish his understanding of their contents, noting he could not show that either the spreadsheets or his

summary was accurate. *Id.* at *8-9. Thus, the district court held "the summary charts lack foundation, constitute inadmissible hearsay, and are not competent evidence. Therefore, the court cannot consider the charts created by Plaintiffs' counsel." *Id.* at *9 (disregarding counsel's documents upon summary judgment). This analysis applies directly to what Zeikos' counsel attempts here.

Alternatively, and once more without any citation to supporting authority, Zeikos simplistically argues that counsel's "summaries" are subject to judicial notice because Zeikos appended the original spreadsheets to his Declaration. Dkt. 221 at 2. Not only is this point undeveloped, and thus properly disregarded, *see supra* at 6, it is also wrong. "Judicial notice is 'an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence,' it 'merits the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts.'" *Carter v. Brackenbox, Inc.*, No. 23-cv-3329, 2024 U.S. Dist. LEXIS 172288, at *6-7 (N.D. Ill. Sep. 24, 2024). Even when taking notice of a matter such as the entry of a court order, the law permits notice only of the judicial act: judicial notice is not an end around the hearsay rules concerning the truth of the matters asserted in such an order. *Lietzow v. Vill. of Huntley*, No. 17 C 5291, 2018 U.S. Dist. LEXIS 202536, at *7 (N.D. Ill. Nov. 29, 2018) ("But while the Court may recognize a prior judicial act, it cannot rely on the facts in a court record for 'the truth of the matter asserted.'") (citation omitted). Likewise here, there is no precedent or support for a request by Zeikos for the Court to "take notice" of the truth of the Excel workbooks at issue absent any explanation or verification by a person with knowledge of what the workbooks contain or their accuracy. Indeed, there is no dispute that the inventory workbooks on which

9

counsel relied are, as it turns out, inaccurate.[2]

Zeikos is also wrong that "Walgreen does not argue that any of these Rule 1006 summaries are inaccurately prepared." Dkt. 221 at 2. While this goes to the merits rather than the threshold issue of evidentiary foundation, Walgreens does dispute the accuracy of counsel's conclusions and the non-summaries that he manufactured to "support" those conclusions. Concerning mylar labels, counsel did not know what fixtures were referred to by one of the workbooks (concerning mylar labels) on which he relied, Dkt. 218 at 3, and in fact that workbook referred to mylar labels for products on only a portion of the fixtures at issue, *see* Dkt. 214 ¶¶ 18-20. Concerning sales, counsel improperly excluded sales for certain products and relied on a formula that he himself could not explain. *See* Dkt. 218 at 4-5; Dkt. 214 ¶¶ 21-22. Concerning subscriptions, counsel filtered out "saddle fixtures" that should have been included by ignoring (based on his own testimony) the contractual definition of that fixture. *See* Dkt. 218 at 6-7. This resulted in a significant undercount of "saddle" fixtures. Dkt. 214 ¶¶ 24-27. Finally, concerning inventory, Walgreens has detailed the issues with the accuracy of the underlying data and counsel's supposed "summary." *See* Dkt. 218

---

[2] Zeikos implies that Walgreens sandbagged it with incorrect inventory data and complains that "Walgreen blames Dunnegan for not catching Walgreen's error sooner." Dkt. 221 at 2, n. 1. That is not so. Had Zeikos narrowed its Rule 30(b)(6) notice to focus on this document, a witness could have explained it. Moreover, counsel should certainly have recognized immediately that if he read the document to show nearly 128 million units of Zeikos products within the first two weeks of the Premium Space program, as he did, this must be wrong when Zeikos knows it delivered less than 7 million units in total over the entire two-year period of the program. *See* Walgreens Response to Zeikos' L.R. 56.1 Statement of Facts, Dkt. 213 ¶ 31. But counsel testified that he "probably never thought about" the impossibility of these figures. Dkt 214-24, Dunnegan Tr., at 153:24-155:14. When Walgreens saw these clear anomalies, it went back to the source and got its employees with working knowledge of these matters to investigate generate new, more accurate spreadsheets. *See* Dkt. 214-25, Mayer Decl. ¶ 19. Walgreens did "accept responsibility" for its initial error and produced the replacement spreadsheets before the close of discovery. Dkt. 214-28, Norman Decl. ¶ 4. But Zeikos insisted on proceeding with the current motion before discovery closed, without testimony from a person with knowledge, and based on its counsel's statements on facts about which he has no basis to attest.

at 8-9. Once more, each of these points concerns the merits of Zeikos' arguments based on counsel's declaration. This is different from the threshold issue of whether counsel's declaration does (or could) establish an evidentiary foundation for any of these materials to be considered on summary judgment. Ultimately, the declaration cannot do so and both its conclusions and analysis of these workbooks and the exhibits themselves are properly stricken.

### III. Alternatively, Counsel is Properly Disqualified

Alternatively, if the Court does not strike his declaration, counsel is properly disqualified. As in so many respects, the response fails to address Seventh Circuit case law that Walgreens cited concerning how use of an attorney declaration in the manner that Zeikos has done violates the rule against attorney-witnesses. *See* Dkt. 218 at 14-15, citing authorities. It is no answer to say, as the response does, that Zeikos will not call counsel at trial. The point is it that counsel violates the rule by asking the Court to recognize counsel as a witness now, upon summary judgment, without suggesting any other means of "proving" the statements for which it relies upon counsel. Zeikos cites no countervailing authority making any exception to the rule cited by Walgreens in the circumstance at bar.

### CONCLUSION

Walgreens' motion does not concern the few paragraphs in the declaration that simply identify deposition transcripts or state that particular documents were produced in discovery. Rather, it goes to the substantive statements of purported fact in the declaration which, ultimately, are the exclusive bases upon which Zeikos seeks partial summary judgment. The declaration of counsel cannot do this work and fails Fed. R. Civ. P. 54(c)(4)'s requirement that summary judgment be supported by admissible evidence, for which a foundation has been established, by a witness with personal knowledge. Zeikos' "response" is no response at all to the substantive points

that are the bases of Walgreens' motion. As such, counsel's declaration is properly stricken as specified in the motion. Alternatively, if the declaration is considered, counsel is properly disqualified.

Dated: November 7, 2024

                                Respectfully submitted,

                                **WALGREEN CO.**

                                By:   /s/ Robert M. Andalman
                                         One of its Attorneys

Robert M. Andalman (ARDC No. 6209454)
Rachael Blackburn (ARDC No. 6277142)
William Norman (ARDC No. 6335298)
**A&G LAW LLC**
542 South Dearborn, 10th Floor
Chicago, IL 60605
Telephone: (312) 348-7629
Facsimile: (312) 341-0700

## CERTIFICATE OF SERVICE

I, Robert M. Andalman, hereby certify that on November 7, 2024, I caused to be electronically filed the foregoing **WALGREEN CO.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE DECLARATION OF WILLIAM DUNNEGAN OR, IN THE ALTERNATIVE, TO DISQUALIFY DUNNEGAN AS COUNSEL IN THIS CASE**, a true and correct copy of which will be served via the Court's EF/ECM system on all parties of record.

/s/ Robert M. Andalman